ALDERMAN, Respondent, v. NEW YORK UNDERWRITERS INSURANCE CO., Appellant.

ALDERMAN, Respondent, v. THE HOME INSURANCE COMPANY, Appellant.

(248 N. W. 261.)

(File Nos. 7248, 7258. Opinion filed May 1, 1933.)

*Boyce, Warren & Fairbank,* of Sioux Falls, for Appellant Home Ins. Co.

*L. E. Waggoner,* of Sioux Falls, for Appellant New York Underwriters' Ins. Co.

*Caster & Baker,* of Lake Andes, and *E. E. Wagner,* of Pierre, for Respondent.

RUDOLPH, P. J. Two actions have been consolidated, tried, and briefed on appeal as one. Separate findings and judgments were entered in each action. Two policies of insurance against fire, one covering the fixtures and the other covering a building located in Gregory county, were issued by appellants. A fire occurred and the building and fixtures were partially destroyed on the 9th day of September, 1928. On July 9, 1929, the plaintiff commenced these separate actions against the defendants and appellants by serving a summons and complaint on the commissioner of insurance, and laid the venue of such actions in Charles Mix county, and the actions were tried in that county. The defendant New York Underwriters' Insurance Company first moved to make the complaint of the plaintiff more definite and certain, after which an amended complaint was served. It then demurred to the amended complaint upon the grounds "that the circuit court of Charles Mix county has no jurisdiction of the person of the defendant or the subject of the action." This demurrer was overruled, and the defendant New York Underwriters' Insurance Company answered to the merits. The appellant Home Insurance Company first answered to the merits and then moved to dismiss the action for the reason: "That said action to recover is one brought on a policy of insurance to recover for loss and damage to the property insured, and that section 2325 of the Revised Code of the state of South Dakota provides that all such actions shall be tried in the county wherein such property insured is situated, at the time of its loss or damage, and for the reason that the said property insured was, at the time of the alleged loss and damage, situated in the county of Gregory, state of South Dakota." This motion was denied. At

the trial of the case both appellants objected to the introduction of any evidence "for the reason that the court has no jurisdiction to hear and determine the issues herein involved, for the reason that the action is a local action arising in a county other than the county of Charles Mix, brought, as the complaint shows, to recover upon a policy of fire insurance, the destruction of the property being in another county, and hence the complaint states facts sufficient to show the court has no jurisdiction." The foregoing presents a question of procedure, which we will consider at this time and dispose of before getting to the merits of the case.

It is the contention of the appellants that the circuit court sitting in Charles Mix county has no jurisdiction to try this case.

Section 2325, Rev. Code 1919, provides:

"Actions for the following causes must be tried in the county in which the subject of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial in the cases provided by the statute: * * *

"5. All actions brought on a policy of insurance to recover for loss or damage to the property insured shall be tried in the county where such property is situated at the time of its loss or damage."

Section 2328, Rev. Code 1919, provides:

"If the county designated for that purpose in the complaint be not the county in which the defendant resides, the action may, notwithstanding, be tried therein unless the defendant before the time for answering expires, demand in writing that the trial be had in the county in which he resides, and the place of trial be thereupon changed by consent of the parties or by the order of the court as provided in this section. If the county designated is not the proper county and where the court changes the place of trial on account of the action having been brought in the wrong county, the court, in its order granting the change of place of trial, may in its discretion allow to the moving party such terms as to it may seem just; and in case of a dismissal of the action or change of place of trial, the payment of the amount awarded by the court shall be made a condition precedent to the commencement of another action or the further prosecution of the action where change

of place of trial has been granted. The court may change the place of trial in the following cases:

"1. When the county designated for that purpose in the complaint is not the proper county.

"2. Where there is reason to believe that an impartial trial cannot be had therein.

"3. When the convenience of witnesses, and the ends of justice would be promoted by the change."

Prior to 1909 this last-quoted provision of our Code read as follows:

"If the county designated for that purpose in the complaint be not the proper county, the action may, notwithstanding, be tried therein, unless the defendant, before the time for answering expire, demand in writing that the trial be had in the proper county, and the place of trial be thereupon changed by consent of parties, or by order of the court, as provided in this section. The court may change the place of trial in the following cases:

"1. When the county designated for that purpose in the complaint is not the proper county.

"2. When there is reason to believe that an impartial trial cannot be had therein.

"3. When the convenience of witnesses and the ends of justice would be promoted by the change." Comp. Laws 1887, § 4891.

In construing these two sections, as they appeared prior to 1909, the territorial Supreme Court, in the case of Territory v. Judge of District Court, 5 Dak. 275, 38 N. W. 439, said: "We think that the latter section is a qualification of the former, and that the court had jurisdiction; that the statute is merely directory with respect to the place of trial; and that the defendant simply has a personal right to insist upon those actions which are denominated as local, being tried in the county in which the subject-matter is situated, and which right the defendant to the action may waive, and in this case has waived, by his default. The statutes of New York, California, Minnesota, and Wisconsin are very similar, if not precisely similar, to ours. March v. Lowry, 16 How. Prac. [N. Y.] 42; Lane v. Burdick, 17 Wis. 97; Gill v. Bradley, 21 Minn. 15; O'Neil v. O'Neil, 54 Cal. 187."

Thus in this early case this section in our Code, which now appears as section 2325, was held to be a venue statute only, and as conferring only a personal right upon the defendant to insist that the action be tried in the county in which the subject-matter is situated, and this is the general holding: "On general principles, and construing the statutes of venue as a whole, the courts have repeatedly held that enactments which fix the venue of a domestic cause in the county in which the subject of action is situated, although perhaps imperative in their terms, are neither jurisdictional nor mandatory, but give to the party, even when sued for real estate, the privilege of having the litigation conducted in the county in which the land lies." 40 Cyc. 41.

The appellant contends, however, that under the wording of section 2328, as it now appears, the rule should be different. We do not agree to this contention. The change in wording in section 2328 does not change section 2325 from that of a venue statute to a statute conferring jurisdiction. Section 2325 still remains in its original form, refers only to the place of trial, and is a venue statute only. Under subdivision 1 of section 2328, as it now appears, there is specifically reserved to the defendant the personal privilege of having the place of trial or action changed "when the county designated for that purpose in the complaint is not the proper county." Appellants rely to some extent upon what they call the "bank cases." Hanson v. Sogn, 50 S. D. 44, 208 N. W. 228; Wasson v. Hirning, 50 S. D. 482, 210 N. W. 725; Spratt v. Citizens' State Bank, 50 S. D. 472, 210 N. W. 676; Fergen v. Lonie, 51 S. D. 315, 213 N. W. 720. However, in the case of Dockstader v. Hirning, 50 S. D. 264, 209 N. W. 542, 543, another of the so-called "bank cases," this court pointed out the distinction between these cases and the ordinary case. The court said: "In the ordinary case the circuit court of the county where the action is brought has jurisdiction to try and determine the case if an application for change of venue is not made. In these insolvent bank matters the legislative intent is that the circuit court of the county of the bank's domicile alone has jurisdiction to wind up its affairs."

We conclude that the circuit court of Charles Mix County had jurisdiction of these cases, and no application for a change of venue

having been made, there was no error in the court proceeding to decide the cases on their merits.

The facts are without any material dispute and are as follows: John N. Ellerman was the local agent at Fairfax, S. D., for both defendant companies, and was duly authorized by the commissioner of insurance to act as such agent. As such agent, he issued both policies of insurance here involved, which were standard fire insurance policies and contained a mortgage clause as follows: "Loss, if any, payable to J. M. Brophy, mortgagee, as his interest in said property might appear." The defendant New York Underwriters had issued another policy to the plaintiff covering the stock of merchandise in the building; this policy contained no mortgage clause. Immediately after the fire, at the solicitation of the plaintiff, Ellerman wrote to both insurance companies advising them of the fire and loss. On September 15, 1928, Ellerman received a letter from S. E. Bickard, who it is admitted is the state agent for the New York Underwriters' Insurance Company as follows:
"Dear sir:

"I am in receipt of your notice of loss as follows:

"Policy No. 125006.

"Assured J. Rex Alderman.

"The adjustment has been referred to Western Adjustment Inspection Co., Sioux Falls, S. D.

"Your very truly,

"S. E. Bickard, State Agent."

On October 11, 1928, Ellerman received a letter from L. C. Nichols, state agent of the Home Insurance Company, acknowledging receipt of the notice of loss. The fact that the claim against the Home Insurance Company was also referred to the Western Adjustment & Inspection Company, Sioux Falls, S. D., is undisputed in this record. On October 5, 1928, the Western Adjustment & Inspection Company made a report to the New York Under writers' Insurance Company as follows:

"Gentlemen: Re—Loss: Policy No. C-125006—J. Rex Alderman, insured, Fairfax, South Dakota Agency.

"Origin of fire in connection with the above claim was suspected as being of incendiary origin and was investigated by the Deputy State Fire Marshall; while no absolute connection can be established with the origin, they suspect one J. M. Brophy.

"Mr. Brophy previously owned the property and entered into a contract on August 23rd, 1927, to sell the property to J. Rex. Alderman. Deed was executed and a mortgage in the amount of $2000.00 was also executed in favor of J. M. Brophy by J. Rex Alderman, both of their instruments were made a matter of record in the Register of Deeds Office in Gregory County, S. D. on October 6th, 1927.

"Then, on November 29th, 1927, J. Rex Alderman executed a deed conveying this property to his father W. J. Alderman; this deed has never been made a matter of record, but adjuster made notation of the date of its execution and the name of the Notary Public who acknowledged the same. These facts have been reported to the Deputy State Fire Marshall who expects to visit Fairfax in a few days to secure a certified copy of the deed.

"According to the records, the consideration to be paid Mr. Brophy for the property covered by your policy was $2800.00 and your policy is in the amount of $1500.00. There is a loss payable clause attached to your policy, which of course, gives noitce of the existence of the mortgage, but inasmuch as your insured has issued a deed for the property he has no interest therein, and the mortgage clause being a simple loss payable clause ,the mortgagee has no more right under the policy than the insured. It is our desire to defeat recovery of J. M. Brophy, mortgagee, for as stated above, he is suspected of being connected with the origin of the fire, and it is our intent to take no further action in the matter unless action to recover is started by the insured or mortgagee.

"Yours very truly,"

On the same date the Western Adjustment & Inspection Company reported to the Home Insurance Company, as follows:

"L. C. Nichols, State Agent,
 "Sioux Falls, S. D.
"Dear Sir: Re—Loss: Policy No. 345—Home—J. Rex Alderman, insured, Fairfax, S. D. Agency.

"Orign of the fire in connection with the above claim was suspected as being incendiary nature and was investigated by the Deputy State Fire Marshall; while no absolute connection can be established with the origin, they suspect one J. M. Brophy.

"Mr. Brophy previously owned the property and entered into a contract on August 23rd, 1927, to sell the property to J. Rex. Alderman. Bill of sale was executed and a mortgage in the amount of $1300.00 covering the property insured by your policy was executed in favor of J. M. Brophy by J. Rex Alderman and was made a matter of record in the Register of Deeds Office in Gregory County, S. D., on August 24th, 1927.

"Then, on October 17th, 1927, J. Rex Alderman executed a Bill of Sale conveying this property to his father, W. J. Alderman; this Bill of Sale has never been made a matter of record, but was seen by our adjuster, who also made a copy of same. These facts have been reported to the Deputy State Fire Marshall who expects to visit Fairfax in a few days to secure a certified copy of the Bill of Sale.

According to the records, the consideration to be paid Mr. Brophy for the property covered by your policy was $1500.00, and your policy is in the amount of $2500.00. There is a loss payable clause attached to your policy which of course, gives notice of the existence of the mortgage, but inasmuch as your insured has issued a Bill of Sale for the property he has no interest therein, and the mortgage clause being a simple loss payable clause, the mortgagee has no more right under the policy than the insured. It is our desire to defeat recovery of J. M. Brophy, mortgagee, for as above stated he is suspected of having a connection with the origin of the fire and it is our intent to take no further action in the matter unless action to recover is started by the insured or mortgagee.

"Yours very truly,"

Shortly after the fire, Mr. Nelson, a representative of the Western Adjustment & Inspection Company, visited the scene of the fire. He talked with Mr. Ellerman and with W. J. Alderman, the father of this plaintiff, who looked after the matter for the plaintiff. They inspected the building. This representative, without any proof of loss ever having been furnished, made an adjustment under the policy covering the stock and merchandise, and this loss was later paid to the plaintiff. However, Nelson left without adjustment of loss under the two policies here sued on, covering the building and the fixtures. It was after this visit of Nelson that the Western Adjustment & Inspection Company wrote the two letters to the insurance companies, above set out. On October 22,

1928, this plaintiff wrote to the Home Insurance Company as follows:

"Dear Sirs: Re: Claim under Policy No. 345—J. Rex Alderman.

"Your local agent has been advised by the State Fire Marshall Department that they have completed their investigation of this fire and that there is no reason why your company should not now adjust this loss, which occurred on September 9th, 1928.

"I hereby make formal demand upon you for the payment of the loss under this policy in the amount of $2500.00 and which I consider is practically a total loss.

"If there is any further information that you may want from me regarding the claim I shall be pleased to furnish same, if you will let me know what you want, and it is possible for me to do so.

"Very truly yours,"

And on the same date he wrote the New York Underwriters-Insurance Company as follows:

"Dear Sir: Re: Claim under Policy No. 125006, J. Rex Alderman.

"Your local agent has been advised by the State Fire Marshall Department that they have completed their investigation of this fire and that there is no reason why your company should not now adjust this loss, which occurred on September 9th, 1928.

"I hereby make formal demand upon you for the payment of the loss under this policy, in the amount of $1500.00.

"If there is any further information that you may want from me regarding the claim I shall be pleased to hear from you as to what you desire.

"Very truly yours,"

Both of these letters were sent by registered mail, and it is admitted were received by the separate companies a few days after being sent. It does not appear that the plaintiff ever received any reply to these letters.

Each policy specifically provided that the insurance company might at any time call the insured for examination, and on December 3, 1928, prior to the commencement of either of these actions, the plaintiff was called for examination under this provision in the policies. Each company on this appeal relies upon that examination. The brief submitted is a joint brief by both defend-

ants, and contains the following: "The policy specifically provides that the insurance company may at any time call the insured for examination, and pursuant to that provision of the policy, insured was examined on said date." It, therefore, appears that the insured was called for examination by both companies, and that this examination was pursuant to the provisions of the policies.

■ ■ The trial court found the facts substantially as set out above, and concluded: "That the defendant's denial of liability was upon the ground that said fire was of possible incendiary origin, and that there was a change in ownership after the policy was issued, and not because of plaintiff's failure to make formal proof of loss within sixty days after the fire, and that the defendant by its conduct, waived the provisions of the policy in relation to proof of loss within sixty days after the fire, and is and should be estopped from denying liability upon that ground." This conclusion, we believe, finds ample support in the facts. This court has taken a liberal attitude regarding the facts necessary to be established sufficient to constitute a waiver on behalf of the insurance company of proof of loss within sixty days, as required by the policy. See State v. Aetna Insurance Co., 58 S. D. 548, 237 N. W. 771, 774; Orr v. National Fire Insurance Co., 50 S. D. 519, 210 N. W. 744, on rehearing 52 S. D. 513, 219 N. W. 119; Fosmark v. Fire Association, 23 S. D. 102, 120 N. W. 777; Enos v. St. Paul Fire & Marine Insurance Co., 4 S. D. 639, 57 N. W. 919, 920, 46 Am. St. Rep. 796. However, we believe, we went too far in the case of State v. Aetna Insurance Co., supra, when the following language was used: "The rule is well settled in this and other states that, if the insurer, within the time for presenting proofs of loss, refuses or fails to pay the loss, it thereby waives necessity of proofs." We are of the opinion that the use of the words "or fails" in the above statement was erroneous, and we expressly renounce the use of those words in that statement as it appears in that case. Nevertheless, we believe, the trial court was justified in concluding as it did, and that the facts in this case bring it within the rule announced in the case of State v. Aetna Insurance Co., supra, when the words "or fails" are omitted. We so conclude for the following reasons:

■ ■ Under the rule announced in the case of Enos v. St. Paul Fire & Marine Insurance Co., supra, we think there can be

no doubt, under the facts here presented, that Nelson represented the companies in the capacity of an adjuster. At the same time Nelson was acting in connection with the two policies here sued on, he appeared for one of these companies and adjusted the loss under the policy covering the stock of merchandise. The letters from the insurance company to Ellerman were to the effect that the Western Adjustment & Inspection Company, of whom Nelson was a representative, was to adjust this loss, and the reports made by the Western Adjustment & Inspection Company to the different companies go to show the authority of the Western Adjustment & Inspection Company in connection with this matter. This evidence, we believe, brings this case squarely within the authority of the case of Enos v. St. Paul Fire & Marine Insurance Co., supra, and distinguishes it from the case of Brooks v. Fidelity & Deposit Co. of Maryland, 53 S. D. 275, 220 N. W. 521. We, therefore, have this situation: Nelson, authorized to adjust this loss, appeared at the scene of the fire a short time after the fire occurred; adjusted another loss for one of these same companies without any proof of loss being furnished; thereafter the company, which Nelson represented, wrote to both defendant companies advising them of the suspected incendiarism and transfer; and further advised them that, on account of these suspicions, it was their desire to defeat recovery under the policy; and to take no further action unless action to recover should be started. The companies after having this information, and at least two weeks prior to the expiration of the sixty-day period, in which it was provided in the policy proof of loss should be furnished, received the letter from this plaintiff wherein he advised the companies of the amount of his loss, demanded payment, and stated: "If there is any further information that you want from me regarding the claim I shall be pleased to furnish same, if you will let me know what you want, and it is possible for me to do so." After receiving this letter and this demand, the companies did nothing. After having this formal, demand made upon them, we believe, their failure to pay constituted a refusal. Had the companies merely failed to pay without this demand having been made upon them, that would not be sufficient, in our opinion, to constitute a refusal. But the demand having been made, we think then that the failure to pay constituted a "refusal," as that term is used in the case of State v. Aetna

Insurance Co., supra. "When the words 'neglect' and 'refusal' are used in reference to the payment of money, we understand the meaning to be, that refusal is a failure to pay money when demanded." Kimball v. Rowland, 72 Mass. (6 Gray) 224.

No doubt, after receiving this demand for payment, the companies would have a reasonable time within which to make payment before their failure to do so would constitute a refusal. The demand was received by the companies on October 25, 1928; the sixty-day period within which the policies provided proof of loss should be furnished would not expire until sixty days after September 9, 1928, or until November 8, 1928. Not having paid within the fifteen days expiring between October 25 and November 8th, we believe the refusal to pay occurred within the sixty-day period. We do not believe it can be said, under the facts here presented, that it would be reasonable for the insurance companies to withhold payment for a period of fifteen days, unless they in fact intended to refuse to pay. Failing to pay within the fifteen-day period was, therefore, a refusal to pay within the sixty-day period provided in the policies.

We are further of the opinion that the facts are ample to justify the conclusion of the trial court that this refusal to pay was because of the information these companies had from the adjustment company of the suspected incendiarism and change of ownership, and not because of any failure to furnish proof of loss. It is our opinion that the waiver of the requirement to furnish proof of loss occurred within the sixty-day period provided in the policy, and therefore it is unnecessary to decide in this case whether a waiver could be established upon facts occurring after the sixty-day period had expired.

There is another reason, however, upon which this conclusion of the trial court may be sustained. After the sixty day period, in which the policies provided proof of loss should be furnished, had expired, these companies elected to act under the provisions of the policy and call the insured for examination. This court, speaking with reference to a similar situation in the case of Enos v. St. Paul Fire & Marine Insurance Co., supra, held as follows: "Whether what had been done or left undone up to that time was sufficient to annul the contract and destroy plaintiff's

rights under it is not now material. Even though such facts would have entitled the company to treat the policy as no longer binding upon them, they were not obliged to so treat it, and they plainly did not. The only right they had to require the assured to submit to an examination rested directly upon the contract, and by the exercise of that right they elected to treat the contract as still in force. They could not claim and exercise a right by virtue of the contract, and at the same time deny the existence of the contract. When, after knowledge of the breach of any of the conditions of the policy, upon which it might have insisted upon a forfeiture, the company recognized its continued validity by requiring the plaintiff to submit to examination under it, it estopped itself from claiming such forfeiture. Titus v. Insurance Co., 81 N. Y. 410; Cannon v. Insurance Co., 53 Wis. 585, 11 N. W. 11; Gans v. Insurance Co., 43 Wis. 108 [28 Am. Rep. 535]; Replogle v. Insurance Co., 43 Wis. 108; Replogle v. Insurance Co., 132 Ind. 360, 31 N. E. 947; Insurance Co. v. Kittle, 39 Mich. 51; Billings v. Insurance Co., 34 Neb. 502, 52 N. W. 397; Hollis v. Insurance Co., 65 Iowa, 454, 21 N. W. 774."

In this case the companies having elected to treat the policies as still in force, by calling the defendant for examination pursuant to the provisions of the policy, knowing no proof of loss had been furnished within the sixty-day period provided in the policy, are not in a position to claim a forfeiture because of the failure to furnish proofs of loss within the sixty-day period. This conclusion is based upon an election rather than waiver. An "election" is defined in 19 C. J. 1257, as follows: "An election, in its legal sense, is the choice of one of two rights or things, to each one of which the party choosing has an equal right, but both of which he cannot have." Thus in this case, if there had been no waiver, the companies might have elected to treat the policies as forfeited because of the failure to furnish the proof of loss as required by the policy, but they could not so elect and at the same time compel the defendant to submit to an examination "pursuant to the terms of the policy." Having elected to treat the policies effective for the purpose of calling the defendant to be examined, after the sixty-day period had expired, they will not now be heard to say that the policy was forfeited because of the failure of the defendant to furnish proof of loss within the sixty days.

 The trial court found "that there was no change in the ownership of said property after said policy was issued; that there was no delivery of deed from plaintiff to his father, and at the time of the loss plaintiff was the unconditional and sole owner of the property subject to the interests of the mortgagee under the mortgage clause attached to the policy." ·The appellants contend that this conclusion is not supported by ·the evidence and findings of the court. Sufficient to say is, we have carefully examined this record, and are of the opinion that the court did not err in this regard.

As hereinbefore stated, the plaintiff was called for examination under the provisions of the policy. That examination had been reduced to writing and was introduced at the trial of this case. It appears that the plaintiff at that examination testified that, prior to the fire, he had, while on a visit to Nebraska, executed a deed to the property covering both policies and mailed the same to his father. At the trial it was admitted that the deed had been executed, but both the father and the plaintiff denied that it had ever been delivered. The testimony at the trial was that the deed, after being executed, had been placed by the plaintiff in the drawer of his desk, and had there remained, and had never been delivered to the father. The appellant insists that the testimony given at the time of the examination under the policy was such as would vitiate the policy under the clause in the policy, as follows: "This entire policy shall be void in case of any fraud or false swearing · by the insured, touching any matter relating to this insurance, or the subject thereof either before or after the loss." The trial court found "that the plaintiff was not guilty of any intentional false swearing or fraud in the examination before the notary public conducted by the defendant's attorney." This matter was very carefully and thoroughly gone into on the trial of the case, and we are not disposed to disturb this finding of the trial court. It is the rule that, under provisions such as appeared in these policies, the fraud or false swearing in order to vitiate the policy must be intentional and willful. In the Second Edition, Joyce on Insurance, § 3339, there is the following: "The provisions in a policy that any fraud or attempted fraud or false swearing on the part of the insured in making the preliminary proofs shall forfeit all claim against the company is a valid stipulation. An intent, however,

must exist, and the general rule seems to be that the statement must be a wilfully false one concerning some material matter, and made with the intent to deceive the insurer, in order to work a forfeiture. * * * There may, however, be an honest misstatement of some fact, and while, as a general rule, fraud and false swearing will avoid the policy, mere mistakes in stating facts which do not in themselves annul its conditions and do not appear to be wilful misrepresentations will not defeat the action." Conceding, therefore, without deciding, that the statements made by the plaintiff in this examination were such that if they had been willfully false and made with the intent to deceive the insurer, they would have worked a forfeiture, nevertheless the findings of the trial court to the effect that these statements were not intentionally made, in our opinion, and under the rule announced in Joyce on Insurance, just above quoted, destroy any claim of forfeiture on behalf of the appellants on account of these statements having been made.

■■ The appellants next contend that the plaintiff here is not the real party in interest; that it appears from the evidence that the mortgage owned and held by J. M. Brophy is in an amount larger than the total amount of the two policies; and that, on account of the mortgage clause attached to the policy, J. M. Brophy is the real party in interest; and the action should have been prosecuted in his name under the provisions of section 2306, Rev. Code 1919. We do not deem it necessary to go into the merits of this contention of the appellant. This court has consistently held that the defense that plaintiff is not the real party in interest, and hence has no right to sue, must be taken by demurrer if it appears on the face of the complaint, and otherwise must be specifically pleaded in bar. See J. I. Case T. M. Co. v. Pederson, 6 S. D. 140, 60 N. W. 747; Western Dak. L. & H. Co. v. Woods, 28 S. D. 637, 134 N. W. 813; Mather v. Dunn, 11 S. D. 196, 76 N. W. 922, 74 Am. St. Rep. 788; Anderson Lumber Co. v. National Surety Co., 49 S. D. 235, 207 N. W. 53. This contention of appellants not having been raised either by demurrer or answer is not, therefore, available to them at this time.

The judgment and order appealed from are affirmed.

POLLEY, ROBERTS, and WARREN, JJ., concur.

CAMPBELL, J., dissents.