S. Hanson Lumber Company, a copartnership, plaintiff-appellee, v. Roy R. DeMoss et ux., defendants-appellees; Overland Builders, a copartnership, et al., appellants.

No. 50380.

NOVEMBER 14, 1961.

Donald R. Payer, of Ames, for defendants-appellants.

Clark & Clark, of Ames, for defendants-appellees.

Pasley, Singer & Seiser, of Ames, for plaintiff-appellee.

THOMPSON, J.—The entire controversy here is between the defendants. Before trial it was stipulated that the plaintiff which had commenced this action to foreclose its mechanic's lien against all defendants was entitled to decree and judgment as prayed against all defendants in the sum of $8966.17, with interest from October 28, 1958, and to foreclosure against the described real estate. So we have only the issues as between defendants DeMoss, husband and wife, hereinafter referred to as DeMoss, and defendants Overland Builders and Orman Overland, Helen L. Overland and Orman Overland as administrator of the estate of Gunnar R. Overland, deceased, hereinafter referred to as Overland, as made by their cross-petitions. This is not to say that they are simple or easily resolved.

On May 19, 1957, Overland and DeMoss entered into a written contract by the terms of which Overland sold to DeMoss a certain building lot as described therein for the sum of $26,-411.76. The contract provides: "First party [Overland] agrees to erect a two-level residence house on the premises according to the plans and specifications attached hereto, marked Exhibit 'A' and by this reference made a part hereof."

Overland proceeded to build the house. Building materials were purchased, in considerable part at least, from the plaintiff, and their price was unpaid in the amount set forth in the stipulation referred to above. When plaintiff's action was commenced

against both the contractor and the owners of the real estate, each cross-petitioned against the other. At that time DeMoss had paid Overland $23,000, leaving $3411.76 still unpaid on the original contract price. There is no dispute as to this. Overland cross-petitioned against DeMoss, asking judgment for this sum and for an additional amount of $4345.13 for extras not included in the written contract. DeMoss' cross-petition asked judgment against Overland for services rendered and material furnished and for damages for defective workmanship in the sum of $4156.27. Each defendant replied, denying the allegations of his adversary's cross-petition.

The trial court, after granting plaintiff judgment as stipulated, found Overland entitled to extras in the sum of $741.75, making the total amount of the contract plus extras $27,153.51. It also found DeMoss entitled to an offset of $3121.47 on cross-petition, leaving a balance due on the contract of $1032.04. It is this part of the decree which is chiefly involved in this appeal, Overland being aggrieved both by refusal of the court to allow him a larger amount for extras and because the court allowed DeMoss the offset stated. The decree also provided that DeMoss should have a judgment over against Overland for the sum due the plaintiff, reduced by the amount of $1032.04, above referred to.

I. The issues are almost altogether factual. DeMoss claims they did not receive a copy of the plans and specifications referred to as Exhibit "A" in the written contract. But both of them signed the contract. Roy R. DeMoss was present much of the time while the house was being built and we think the evidence that he knew or should have known of the plans as they were being carried out clearly preponderates. In addition he introduced as his Exhibits F-1, F-2 and F-3, certain blueprints which in themselves show the general plans and in many cases the nature of the material to be used in the building. It is not open to him now to claim anything for oral agreements made before the written contract and so far as the subject of the claimed agreements is covered by it. Any such agreements were merged in the written contract. The point seems elementary, but see Henn v. McGinnis, 182 Iowa 131, 134, 165 N.W. 406, 407.

208

Likewise, we are committed to the rule that when the contractor has substantially complied with his contract he is entitled to recover the contract price with deductions for any defects or incompletions. Farrington v. Freeman, 251 Iowa 18, 23, 99 N.W.2d 388, 391, and citations. This is not disputed by DeMoss; in fact he cites Stratmeyer v. Hoyt, 189 Iowa 85, 90, 91, 174 N.W. 243, 245, which states the rule.

But it is also true that agreements made after the written contract which modify it or add to it or are collateral to it are valid and enforceable. So DeMoss may recover for any services rendered by him or materials furnished in accordance with oral agreements made after the written contract had been entered into; and Overland is entitled to extras ordered or agreed upon thereafter not covered by the contract. Iltis v. Gentilly, 234 Iowa 689, 693, 13 N.W.2d 699, 701, and cases cited. All of these are well settled rules, and leave only questions of fact for determination.

II. It will be seen that there are two major areas of dispute. One, was Overland entitled to additional allowances for extras, and if so, for what items and in what amount? Two, should DeMoss have anything for services and materials furnished, or as damages for Overland's failure to perform the contract according to its terms, and, if so, how much? Each of these, however, breaks down into a consideration of many items, a full and complete discussion of each of which with an analysis of the evidence concerning it would require an unreasonable use of space and would be of no value to the legal profession. Two additional legal principles, however, should be stated. The first is that in equity cases where facts are in dispute we give weight to the findings of the trial court, particularly where the credibility of the witnesses is involved. No citation of authority is needed for this often announced principle.

The second is that one who does not appeal can obtain no greater relief here than was given him by the trial court. Fryer v. New York Brokerage Co., 152 Iowa 688, 692, 133 N.W. 110, 111; Rankin v. Schultz, 141 Iowa 681, 688, 118 N.W. 383, 386. This means that DeMoss, who did not appeal, cannot now

complain of allowances denied to him or made to Overland by the judgment below.

III. We turn first to the items for extras claimed by Overland which the trial court did not allow. The first of these is for changing 8x8x16 concrete block for the footings to 12x8x16 block. Eugene Criss Jr., assistant manager of the plaintiff, lumber company, testified that he prepared the plans for the house and they called for 8x8x16 block, which is customary for this type of house in this area. There is some dispute as to this, but we think the weight of the evidence is with Overland and the change in size of the blocks constituted an extra for which he is entitled to an allowance in the sum of $126.25.

The trial court allowed Overland $400 for "credit on stone in basement fireplace instead of brick and additional stone on house." Just what this covers is not entirely clear. Overland claims that at DeMoss' order the kind of stone originally planned was changed to a considerably more expensive one, and he is corroborated by the testimony of the mason who did the work. Not only was the substituted stone more expensive but it was more costly to lay. Overland asks $1449.93 for this item, and we think the weight of the evidence is with him. This amount will be allowed in place of the sum of $400 fixed by the trial court, and will be in full compensation for any additional cost of stone and mason work or material alleged by Overland.

Overland should be allowed $237.65 for tiling the bathroom floors. The DeMoss Exhibit F-1 shows as to the upper floor bathroom "Lino." floor, and as to the lower one Exhibit F-2 says "conc." floor.

Likewise the cost of a garbage-disposal unit in the sum of $55 should be allowed Overland. No unit was called for by the plans, and we think it is not something normally to be considered as a part of a house to be furnished by the builder. The cost of the installation will not be allowed, since the plans call for "roughing in" the wiring, as Overland concedes. How much cost of installation would remain is not clear.

The original plans called for the basement floor to be of concrete. This is shown definitely by DeMoss' Exhibit F-2, in which it appears that each room was marked "conc. floor."

However, tile was used at an extra cost of $277.61 for the material and $245 for installation. This was an extra for which Overland should be compensated, in the total sum of $522.61.

It must be noted that the exact kind of material was not always specified in the plans and specifications. However, when this does not appear, weight must be given to the cost specified for the particular purpose. Thus it seems evident in regard to the stone, for which we have above made an additional allowance of $1449.93, that the sum allocated was $1810. This price was for Arkansas Cherry Blend Stone; when it was changed at DeMoss' order to Lannon Veneer and by his action in bringing this stone to the premises for installation, we have held the extra cost was not contemplated by the contract and should be allowed to Overland.

Overland also claims he should be allowed ten per cent of the cost of the extras as compensation, and cites Lautenbach v. Meredith, 240 Iowa 166, 170, 35 N.W.2d 870, 875. All we held in the Lautenbach case was that compensation to the contractor of cost plus ten per cent was a common arrangement for building at that time, and that such was the agreement between the parties. But when a contractor who has a definite contract for a stipulated sum is allowed payment for extras on the basis of quantum meruit, the sum claimed and allowed is the reasonable value of the services and materials furnished, and presumably includes a fair return to the builder. Allowance of an additional ten per cent would be something more than the reasonable value. We do not allow this item.

We have not discussed other claims made by Overland, but are satisfied the disposition of them by the trial court was correct. Our conclusion on this branch of the case is that Overland should be allowed for extras the sum of $1991.44 in addition to the amount given him by the trial court, or a total of $2733.19.

IV. The trial court allowed DeMoss offsets totaling $2370.57, for defects in the work done by Overland, omissions to supply items which were thought to be a part of the contract, and for services rendered and material furnished. Many of

these we think were correctly allowed; but others require comment.

Of the total amount set out above, $750.90 was for services in hauling and furnishing material for the job. Overland contests this; but we think it was the contractor's duty to furnish and bring all material to the building site, in the absence of a special agreement which does not appear. The trial court correctly allowed this item.

An allowance of $400 was made for waterproofing— re-waterproofing, in fact—two sides of the foundation. Overland's evidence shows that this was done, and by what we think the weight of the evidence was in accordance with modern and generally accepted practices. There is evidence that in times of heavy rains some water came into the basement; and the so-called basement is in fact the lower floor of the house. DeMoss concedes Overland did not guarantee there would be no water coming through. Our conclusion is this item should not be allowed.

The sum of $305.52 was allowed DeMoss for replacing plate glass windows with thermopane. There seems to be no basis for this allowance. The exhibits introduced by DeMoss show the windows to be No. 184 P.A. Eugene Criss, Jr., who prepared the plans, said this does not designate a thermopane window. The evidence is that the windows installed were those specified.

An allowance of $185 for gutters and downspouts likewise is not supported by the evidence. The plans and specifications do not call for these, and there is evidence houses of this type do not need and are not ordinarily equipped with them. The item of $198.98 for an oven range is also beyond the terms of the plans. They show a location designed for an oven, but the witness Criss said this merely means the place where it was to be put. There is no competent evidence the contractor was to furnish this item.

An item of $110 claimed for the substitution of ceramic tile for plastic must be disallowed. The plans do not show this was required, and there is a strong indication in the testimony of Mrs. DeMoss that she preferred the plastic tile, or at least

assented to it, because the color she wished could not be found in ceramic.

An allowance made by the trial court of $100 for a patio must also be disapproved. The plans do not provide for this and we can find no basis for its cost to be charged to Overland. Some of the other items charged for DeMoss against Overland seem quite liberal in their amounts; but since there is evidence to sustain them and we give weight to the findings of the trial court we do not interfere.

V. It is our holding that the sum of $3121.47 allowed DeMoss must be reduced by $1299.50, leaving a total offset of $1821.97.

The recapitulation therefore appears thus:

Original contract price........$26,411.79
Due Overland for extras.... 2,733.19

Total ...............................$29,144.98   $29,144.98
Less credit due DeMoss:
    Paid cash ......................... 23,000.00
For services, damage, etc...... 1,821.97

Total ...............................$24,821.97   $24,821.97

Owed by DeMoss ...........                $ 4,323.01

VI. The sum due from DeMoss should bear interest from April 15, 1958. Costs in both courts should be equally divided between Overland and DeMoss. DeMoss should have a judgment over against Overland for the difference between the judgment held by the plaintiff and the sum due from DeMoss to Overland; and provision should be made in the decree for credit to Overland for any sums paid directly to the plaintiff to apply on its judgment, prior to payment of said judgment by DeMoss.— Modified, affirmed and remanded for decree.

All JUSTICES concur except BLISS, J., not sitting.