Calvin L. MOULTON, Herma Marsden, Franklyn Craft, R.C. Stensen, Harold Ramse, Kenneth Harrod, Mary Kuppinger Jordan, Adelaide M. Ward, and the South Dakota Cabin Owners Association, Inc.: on behalf of themselves and all other cabin owners with Custer State Park, Custer County, South Dakota, similarly situated, Plaintiffs and Appellees,

v.

The STATE of South Dakota; the South Dakota Department of Game Fish and Parks; the South Dakota Game, Fish and Parks Commission; and John Cimple, Robert Ingle, Walter Black, Owen Wipf, Harvey Thayer, and Robert Reder, individually, and in their capacity as members of the South Dakota, Game, Fish and Parks Commission, Defendants and Appellants.

Nos. 14506, 14519.

Supreme Court of South Dakota.

Argued Oct. 23, 1984.

Decided Feb. 20, 1985.

Rehearing Denied March 28, 1985.

Patrick M. Ginsbach and Jane M. Farrell of Farrell, Farrell & Ginsbach, Hot Springs, for plaintiffs and appellees.

Mark A. Moreno and Craig M. Eichstadt, Asst. Attys. Gen., Pierre, for defendants and appellants; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

1. SDCL 1–26–14 provides:
   The validity or applicability of a rule may be determined in an action for declaratory judgment in the circuit court for the county of the plaintiff's residence, if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with

FOSHEIM, Chief Justice.

The State appeals from a summary judgment which in effect determined that the Game, Fish and Parks Commission (Commission) had no authority to terminate private cabin site permits in Custer State Park. We affirm in part and reverse in part.

The Commission granted Moulton *et al.*, (cabin owners), a hearing regarding their permit renewal, and decided to allow the permits to terminate December 31, 1982. Cabin owners took, but abandoned, a direct appeal from that decision. This Declaratory Judgment action was brought in Custer County pursuant to SDCL 1–26–14.[1] The State first argues that the Custer County trial court lacked jurisdiction because the Commission's action was not a rule within the meaning of SDCL 1–26–1(7). *See, Mills Wholesale Liquor Co. v. Zellmer*, 298 N.W.2d 523, 525 (S.D.1980). In deciding this issue, we proceed with the following sequence: (1) Was the Commission's decision a rule? (2) If it was a rule, the Custer County court had jurisdiction under SDCL 1–26–1(7) and 1–26–14. (3) If not a rule, then the case should have been venued in Hughes County. *Mills, supra.* (4) If improperly venued, we must decide whether venue is jurisdictional. (5) If venue is jurisdictional, and the Commission's decision was not a rule, the case was improperly tried in Custer County. If venue is not jurisdictional, and the Commission's decision was not a rule, then the case was properly venued in Custer County because the State failed to request a change in the place of trial.

█ "A rule ... is the product of rule making and rule making is the part of the administrative process that resembles the legislature's enactment of a statute. Rule making is the issuance of regulations or

or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question.

the making of determinations which are addressed to indicated but unnamed and unspecified persons or situations." *Id.* at 526, *quoting Fox v. Kneip,* 260 N.W.2d 371, 75 (S.D.1977) *cert. den.* 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759, *appeal after remand,* 294 N.W.2d 657 (S.D.1980); *See also,* SDCL 1–26–1(7). The Commission, exercising the discretionary power conferred on it by statute, decided not to renew the private cabin permits in Custer State Park. That is not the product of rule making or quasi-legislative action contemplated by the statute and our interpretative decisions. *Fox, supra; State ex rel. Green v. Knight,* 47 S.D. 224, 197 N.W. 159 (1924). The Custer County court did not, therefore, have jurisdiction as a matter of law.

■ Having decided there was no rule, we look to the *Mills* case. *See, Mills, supra* at 526. Absent a rule, SDCL 1–26–14 cannot provide the basis for venue in Custer County. *Id.* The declaratory judgment action must therefore come under SDCL ch. 21–24 and SDCL 15–6–57. *Id.* Accordingly, proper venue was in Hughes County pursuant to SDCL 15–5–2.[2] *Id.*

■ SDCL 15–5–2 is a general venue statute. We have consistently held that general venue statutes set the place of trial only, and do not confer jurisdiction. *American Advertising Co. v. Dept. of Transportation,* 280 N.W.2d 93 (S.D.1979); *Putnam Ranches, infra; Meihak v. Schreckenghaust,* 67 S.D. 603, 297 N.W. 122 (1941); *Ott v. Cheney,* 63 S.D. 524, 261 N.W. 204 (1935); *Alderman v. NY Underwriters Ins. Co.,* 61 S.D. 284, 248 N.W. 261 (1933). The State did not demand a change of place of trial, as was done in *Mills, supra.* SDCL 15–5–10 provides that unless a defendant demands such a change, the action may be tried in the county chosen by the plaintiff. *Putnam Ranches, Inc. v. Pro-*

duction Credit Assn., 271 N.W.2d 856 (S.D.1978). Thus, the State's jurisdiction argument fails.

The Commission next disputes the determination that it lacked authority to terminate cabin owners' permits. In 1919, the legislature created the Custer State Park Board and in 1921 authorized it to enter into cabin site permits or leases "to encourage the erection of summer cottages" in the Park. Subsequent legislation similarly encouraged the erection of summer cabins. In 1961, the legislature extended the authority of the Game, Fish and Parks Commission, (created in 1945), to grant permits and leases on land owned or controlled by it, (including the Custer State Park) and created a new power to grant easements. 1961 S.D.Sess.Laws ch. 114. The legislative policy of encouraging private cabins in Custer State Park, then codified as S.D.C. § 55.4509 (1939) was left intact by the 1961 amendments.

In 1966, however, two statutes were enacted which signalled a policy modification. Section 1 of Chapter 68 "Amending Law Relating Powers and Duties of Game, Fish and Parks Commission and Director" provided:

> 1966 ch. 68 Section 1. That subsections (1), (3) and (6) of SDC 1960 Supplement 25.0106–1, as amended by Chapter 114 of the 1961 Session Laws and Chapter 108 of the 1965 Session Laws, be, and the same is hereby, amended to read as follows:
>
> "(6) To grant easements, leases or permits on property which it owns or controls for public utilities, for agricultural purposes, for electrical power or telephone lines, towers for radio, TV or radar, *for cabin sites,* and for concessions, for the developments, operation or management of facilities to service

----

**2.** SDCL 15–5–2 provides:

Actions for the following causes, or upon the following instruments, must be tried in the county where the cause, or some part thereof, arose, or the forfeiture was declared, subject to the power of the court to change the place of trial:

. . . .

(2) against a public officer, or person specially appointed to execute his duties, for an act done by him in virtue of his office, or against a person, who, by his command or his aid, shall do anything touching the duties of such officer[.]

the needs of the public." (Emphasis added).

This provision now appears as SDCL 41–2–26. The second law enacted was 1966 S.D. Sess.Laws Chapter 73; section 1 *expressly repealed* Chapter 55.45 of the South Dakota Code of 1939 and all amendatory acts thereof. *See, Argo Oil Corp. v. Lathrop,* 76 S.D. 70, 72 N.W.2d 431 (1955) (express repeal of a law occurs when it is literally declared by subsequent law). As noted, § 55.4509 of the 1939 code contained the legislative policy of encouraging private cabin sites in Custer State Park.

██ The manifest intent of a statute must be derived from the statute as a whole, *Herrmann v. Bd. of Comm. of the City of Aberdeen,* 285 N.W.2d 855 (S.D. 1980), from its language, *State Theater Co v. Smith,* 276 N.W.2d 259 (S.D.1979), and affording the language its plain, ordinary and popular meaning. *Independent Community Bankers Association et al. v. State et al.,* 346 N.W.2d 737 (S.D.1984); *Messersmith v. Stanga,* 71 S.D. 88, 21 N.W.2d 321 (1946).

██ The history and plain language of SDCL 41–2–26 indicates a legislative intent to abandon the "encouragement" policy, in favor of a discretionary power in the Commission to grant or terminate cabin permits in Custer Park, as may best serve the public interest. Cabin owners' statutory interpretation, if adopted, would require the Commission not only to renew their permits but also potentially grant new permits, even though it failed to serve the public interest. This would defeat the purpose of the statute. *See, Durr v. Hardesty,* 76 S.D. 232, 76 N.W.2d 393 (1956); *Western Surety Co. v. Mydland,* 85 S.D. 172, 179 N.W.2d 3 (1970). A statutory grant of power includes authority to employ the means necessary to exercise that power. *Board of Regents v. Carter,* 89 S.D. 40, 228 N.W.2d 621 (1975). The Commission was accordingly within its delegat-ed authority when it utilized the nonrenewable leases to terminate private cabin site permits in Custer State Park. *Mills, supra; Fox v. Kneip, supra; State ex. rel. Green, supra.* It likewise may in the future exercise its discretion to grant new cabin site leases so long as it serves the public needs.

We next consider whether the trial court erred in deciding that Kenneth Harrod did not have a valid ninety nine (99) year lease on his cabin site. It appears that a Mrs. Briggs originally had a ninety nine (99) year lease to his cabin site, but we fail to see that as relevant. All 1958, 1962, 1968 and 1973 leases, including Mr. Harrod's, contained provisions reserving to the Commission the right to cancel permits upon their expiration dates, if the Commission determined that the cabin site had a higher priority for public use other than as a private summer home site.[3]

The 1978 written contract between cabin owners and the Commission called for expiration of permits in 1982. The first paragraph of the 1978 cabin permits provided "THIS PERMIT WILL NOT BE RENEWED—THE ABOVE FIVE YEAR TERM WILL CONCLUDE THE STATE'S POLICY OF ALLOWING PRIVATE SUMMER HOME SITES IN THE PARK." Paragraph 20 provided "It is agreed and understood that THIS PERMIT EXACTLY TERMINATES ON DECEMBER 31, 1982 AND IS NOT RENEWABLE AFTER THE EXPIRATION OF THIS TERM." The cabin owners, including Mr. Harrod, all signed a permit with this provision.

██ These new contracts supersede prior lease arrangements, *see, South Hanson Lumber Company v. DeMoss,* 253 Iowa 204, 111 N.W.2d 681 (1961), and any oral representations must yield to subsequent written contracts. *Id.; See also,* SDCL 53–8–7.

---

**3.** The cabin permits dated 1958, 1962, 1968 and 1973 contained the following provision:

"24. If the Commission determines that the area covered by this permit has a higher pri-ority for public use other than as a summer-home site, the Commission reserves the right to cancel this permit upon said expiration date."

■ The evidence does not support misconduct or duress as claimed. As we stated, the Commission was fully within its statutory authority in refusing to renew the private permits. Granted the cabin owners were not in a favorable bargaining position when they signed the nonrenewable permits. They nevertheless signed the permits and enjoyed the benefits. This, coupled with the previous signed permits containing the reservation of rights clause, makes any claimed previous leases irrelevant. The State was entitled, as a matter of law, to have the permits enforced according to their plain terms.

■ Cabin owners filed a notice of review to that portion of the Judgment for Plaintiff which denied them attorney fees, damages and costs. The cabin owners rely on 42 U.S.C. § 1988 and claim that they are a "prevailing party" for purposes of this act. This action did not, however, vindicate a broad public interest. Rather, it was taken to enforce private property rights. The trial court was correct in denying attorney fees. *See, Van Emmerik v. Mont. Dak. Util. Co.,* 332 N.W.2d 279 (S.D.1983); *Boland v. City of Rapid City,* 315 N.W.2d 496 (S.D.1982).

■ Finally, cabin owners urge error in denying their arguments of estoppel and violation of constitutional rights. These arguments were addressed only in the trial court's memorandum decision, which is not reviewable on appeal. *See, Jones v. Jones,* 334 N.W.2d 492 (S.D.1983); *See also, Talbert v. Talbert,* 290 N.W.2d 862, 864 (S.D. 1980); *Frisbee v. Dale,* 272 N.W.2d 806, 807–808 (S.D.1978); *Western Bldg. Co. v. J.C. Penney Co.,* 60 S.D. 630, 637, 245 N.W. 909, 911 (1932); *State Bank of Burleigh County Trust Company v. City of Bismarck by and through the Bismarck Board of City Commissioners,* 316 N.W.2d 85 (N.D.1982). We therefore decline to address these claims.

We affirm the trial court's jurisdiction and denial of attorney fees but otherwise reverse.

WOLLMAN, J., and WUEST, Acting J., concur.

MORGAN, J., concurs in part and dissents in part.

HENDERSON, J., dissents.

MORGAN, Justice (concurring in part, dissenting in part).

I agree that if the State failed to request a change of venue the Seventh Circuit Court for Custer County had jurisdiction to dispose of the matter.

From that point on, I disagree. The 1921 enactment and the 1927 enactment authorized the Custer State Park Board to lease cabin sites on a term basis, the latter prescribing the grounds for cancellation of such leases. 1921 S.D.Sess.Laws ch. 188, § 1; 1927 S.D.S.S.Revised, ch. 12, § 8. These statutes affirmatively set forth a legislative policy, or intent, to encourage the erection of summer cottages or homes. There has been no affirmative expression of a legislative intent to renounce this policy. The majority adopts the State's argument that the 1966 Legislature *impliedly* renounced the policy. To require the permittees to tear down valuable properties upon the whims and caprice of an administrative agency on such a speculative interpretation, while admitting that the agency can turn around and issue other cabin permits in the future, eschews all common sense.

Even assuming the legislative intent, which I do not for one moment, the trial court determined that Kenneth Harrold holds a 99-year lease. The legislature cannot constitutionally impair that contract. S.D. Const., art. VI, § 12; *Lee v. Clark Implement Co.,* 31 S.D. 581, 141 N.W. 986 (1913); *State ex rel. Waldo v. Fylpaa,* 3 S.D. 586, 54 N.W. 599 (1893). The majority butters this over with the theory that the permittees "voluntarily" waived their right to complain when they signed permits with fixed termination dates. In the first place, this theory was never proposed to the trial court, nor to this court on appeal, and in the second place, it flies in the face of the record. The record contains the affidavits

of permittees which allege and evidence that they were coerced to either sign restrictive permits or move off.

It appears to me that the trial court erred in granting the summary judgment in this case because there are material issues of fact with respect to the possibility of 99-year leases and the right of succession of the present permittees, as the State suggests.

HENDERSON, Justice (dissenting).

Essentially, I join the dissent of Justice Morgan. However, I wish to address the Summary Judgment granted in favor of the cabin owners. The Commission is absolutely precluded from disputing the cabin owners' facts presented to the trial court. The cabin owners supported their Motion for Summary Judgment by numerous affidavits and showings; under SDCL 15–6–56(e), the Commission was required to affirmatively respond and set forth facts contravening the showing of the cabin owners. This was not done. Commission had no right to rest on its pleadings. If an adverse party does not respond, summary judgment, if appropriate, shall be entered against him. *Peterson v. Rogers,* 347 N.W.2d 580, 581 (S.D.1984). Commission's only response was a memorandum. It was a defective, non-probative, non-evidentiary, non-statutory force. I do not believe that the State of South Dakota is even in court under the settled law of this state. This Court has consistently held that where the moving party complies with the procedures for summary judgment, the nonmoving party must set out the specific facts showing a genuine issue. *See* Smyser, *The Summary Judgment-Ascertainment of the Genuine Issue,* 16 S.D.L.Rev. 20 (1971). This case was ripe to be decided upon a Motion for Summary Judgment. A nonmoving party may not rest upon the pleadings, but must present a response which sets forth specific facts through affidavit or other means of discovery which show a genuine issue of fact exists. SDCL 15–6–56(e); *Lee v. Beauchene,* 337 N.W.2d 827 (S.D.1983); *Hunt v. Briggs,* 267 N.W.2d

566 (S.D.1978); *Hughes-Johnson Co. v. Dakota Midland Hospital,* 86 S.D. 361, 195 N.W.2d 519 (1972). At oral argument, Commission's counsel admitted no responsive affidavits were filed; Commission's attorneys represented to the trial court that it did not dispute the facts set forth in the affidavits filed by the cabin owners. Acting thereupon, the trial court determined there would be no further hearing and the Motion for Summary Judgment could be determined. The cabin owners facially presented a sound case that the Commission could not change legislative policy and were statutorily without power to take adverse action against them. Cabin owners affirmatively deposed absolute duress and coercion by state officials with respect to their permits. How, then, with this unanswered, can the majority opinion, as Justice Morgan suggests, *factually* substantiate a voluntary consent to restrictive permits?

The gut holding of the trial court is that the Commission did not have the power to eliminate the leasing of these private cabins in Custer State Park. It appears to me that the State is trying to use "clean-up" legislation to springboard a new legislative intent. The legislature has the power to determine that which shall be the public policy of the State. The legislature cannot abdicate its essential power to enact basic policies into law, or delegate such power to any other department or body. *Boe v. Foss,* 76 S.D. 295, 77 N.W.2d 1 (1956).

There can be no doubt that the policy of the legislature has been, historically, to encourage the erection of summer cottages in Custer State Park. This started in 1919. In 1921, this policy was enlarged to make term leases or lots with the proviso that the summer cottages could not be on the slopes of Sylvan Lake. Ninety-nine year leases were offered by park personnel to private cabin owners to encourage them to locate their cabins within the park. In 1927, this was reiterated and the language was changed to leases for "erection of homes." The legislature added a requirement that homes had to be located only in certain areas and were to be in areas which

had been platted, surveyed, and designated by the park board.*

In 1945, the South Dakota Park Board and the Game and Fish Commission (separate entities) merged into the Department of Game, Fish and Parks. Nothing was said about an abdication of legislative policy of encouraging cottages or homes in Custer State Park. In fact, in the 1960 Supplement to the 1939 Code (in Title 25), the policy of encouragement was reaffirmed for under "additional powers of Commission" specifically 25.0106–1, in the preamble, it plainly stated that the Commission had certain powers and duties in addition to those referred to in the old Chapter 55.45 of the South Dakota Code of 1939.

In 1961, another section was added which essentially gave the Commission the power to grant easements but also the power to grant leases. So from 1921 to 1961, a period of 40 years in this State's history, a policy of encouragement was authorized and mandated by the state legislature.

This brings us to 1966, when two laws were passed, which I believe to be clean-up legislation, and which ultimately brought about the controversy that exists today. These two laws are: § 1 of Chapter 8 and Chapter 23 of the 1966 Session Laws. Again, it is to be noted in Subsection (6) that "cabin sites" were expressly recognized. The Commission has leaped on the words "to service the needs of the public," as if this meant that all private leases and ownership was intended to be abolished. The entire case of the State rests on those seven words.

A 1967 meeting was held and the Commission decided to give these cabin owners 15 years to terminate their leases. Not one of these cabin owners received any notice of this meeting. Immediately following the meeting, after the medicine was made, the cabin owners were notified of the deci-

sion. This was a power move by the Commission without any due process accorded.

We now take our minds down the road some 15 years. In 1982, the Commission decided (again) to terminate private ownership of cabins, cottages, homes (call them what you will) as of December 31, 1982. Essentially, if not in its entirety, the 1982 decision was based upon the 1967 meeting. The majority opinion is based upon a conclusion that the legislature impliedly renounced its earlier policy in 1966. It appears to me that a review of the statutes on the books at that time obviously discloses that the legislature was trying to clean up legislative enactments and put them under one roof. We had laws, in 1966, under various titles such as "State Government" or "Agriculture" or "Crime" or "Fire" and all of these pertained to laws relating to the Game, Fish and Parks Department. Inasmuch as SDC 55.45.09 was repealed, and evincing an intent to continue to recognize "cabin sites," "cabin sites" was once again listed as a purpose and recognized in law in the 1966 act. Had the legislature not mentioned this, it would have been either an obvious oversight or it might be argued that intentionally the legislature would no longer recognize "cabin sites."

Surely, there has been no clear legislative declaration that these cabin sites, summer cottages, or homes are to be eliminated in Custer State Park. SDCL 41–2–26 provides:

> The department of game, fish and parks shall have the power and duty to grant easements, leases, or permits on property which it owns or controls, for public utilities, for agricultural purposes, for electrical power or telephone lines, towers for radio, television or radar, for cabin sites, and for concessions, for the developments, operation or management of facilities to service the needs of the public.

---

\* Original cabin owners were offered 99 year leases by Park officials. Based on this offer, predecessors to the current cabin owners were induced to build the cabins in the park rather than on nearby private land or on National

Forest Land. After the cabins were built, Park officials repeated the promise that the leases would be issued for 99 years. This is substantiated by the record.

For some reason, the majority opinion fails to point out all of the statute and the very relevant part, that "[t]he department ... *shall have the* power and *duty* to grant ... leases ... on property which it owns or controls ... for cabin sites...." (Emphasis supplied.) If the legislature attempted to delegate the authority to the Commission to decide whether cabin site leasing should be eliminated from Custer State Park, such a delegation of power would be legislative in nature and could not be conferred upon the Commission. *City of Bristol v. Horter,* 73 S.D. 398, 402, 43 N.W.2d 543, 545–46 (1950). From the 1920's, the state legislature recognized that Custer State Park was unique and declared policy with respect to its development. To allow the Commission to eliminate cabin site leasing within the Park based upon SDCL 41-2-26 and its legislative history would constitute an encroachment upon the legislature's power by an administrative agency. Furthermore, there is an insufficient guide or standard imposed by the legislature to aid the Commission in exercising the legislative power to eliminate leasing private cabin sites in the Park. *Affiliated Distillers Brands Corp. v. Gillis,* 81 S.D. 44, 130 N.W.2d 597 (1964).

Therefore, I conclude, as did the trial court, that the Commission lacked the power to adopt a policy of elimination and that the action of the Commission in 1967 and 1982 to eliminate private cabin sites, summer cottages, or homes exceeded its jurisdiction. Its actions in this regard are therefore void. Moreover, and most importantly, the honor of the State of South Dakota is at stake. The citizenry were invited to invest, build, and lease; thereby, the people were governmentally induced to construct cottages in Custer State Park. Promises were made by Park officials. These promises are now broken by the Game, Fish and Parks Commission. Yes, originally in 1967, behind closed doors. Having served a pioneer and useful purpose, these cottages—like old shoes—are to be cast aside. Abandoned, in the annals of time, are the promises. The bludgeoning of the innocents is complete.