McKEAN AUTO COMPANY, Appellant, v. O'MARRO, Respondent.

(223 N. W. 354.)

(File No. 6311. Opinion filed February 2, 1929.)

For former opinion, see 53 S. D. 55, 220 N. W. 144.

*Owen & Hareid,* of Sioux Falls, for Appellant.

*Rice & Rice,* of Flandreau, for Respondent.

CAMPBELL, J. This matter is now before us on rehearing. For former opinion, see Id., 53 S. D. 55, 220 N. W. 144.

Plaintiff sued in claim and delivery to recover a Flint automobile or the value thereof if redelivery could not be had. The automobile in question was the property of the plaintiff company, a dealer in Flint automobiles in Sioux Falls and vicinity, and by plaintiff intrusted to the possession of one Bumps, who sold the same to defendant. Plaintiff contended that such sale by Bumps was wrongful and unauthorized, and that he was not in any manner plaintiff's agent, but that plaintiff merely loaned him the car for his private use for a day or two. Defendant contended, on the other hand, that Bumps was in fact an agent of plaintiff, and had

actual authority to sell the car in question. Verdict and judgment were for defendant, and plaintiff appealed.

The case was submitted to the jury on the agency question under the following instructions:

"There is only one ultimate question of fact for this jury to decide, and which is decisive of this case, and that is: Was this man Bumps the agent and salesman of the plaintiff company, and did he have a right to sell this car and collect the pay for it?

"2. Now, if you find from the evidence in this case that at the time this car was sold to the defendant, that this man Bumps was the agent and salesman, or was an agent and salesman of this auto company, and that he had authority to sell their cars, or this car, and receive the pay for it—if you find that that is a fact, then the plaintiff could not recover in this action, and your verdict should be for the defendant.

"3. The court will say to you that in deciding this question, the authority of an agent or salesman can be proved the same as any other question of fact. It may be proven by what the principal, or the auto company, told the agent, orally or in writing, that he could do. The proof in this case is largely what we term circumstantial, that is to say, the authority of the agent in this case. probably, if he was an agent of the company, and whether he was such agent and salesman, and what authority he had, is proven, if at all, by what is known as circumstantial evidence, that is, by the surrounding circumstances and facts; and on that question you would have a right, and it would be your duty, to take into consideration all the evidence, and then to say whether the company did give this man Bumps authority to sell this car and to collect the sale price.

"4. The court will say to you, as a matter of law, that if you find from the evidence in this case and under the law as the court has given it to you, that at the time of the sale of this car this man Bumps was the agent and salesman of the plaintiff company, and had authority from them to sell this car, and if he was entrusted by them with the possession of the car, then he would have authority to collect the purchase price."

 No error is assigned in this court upon the giving of any of these instructions, and for the purposes of this appeal they are the law of the case. It is to be observed that the case was sub-

mitted under the instructions, not upon any theory of ostensible agency, but upon the theory of actual agency. Therefore circumstances tending to show that Bumps was in fact the actual agent of appellant were properly admissible in evidence, regardless of whether or not respondent had knowledge of the existence of such circumstances or relied thereon at the time he dealt with Bumps as an agent of appellant. Respondent's knowledge of and reliance upon circumstances tending to show agency would be a prerequisite to the admission of such circumstances in evidence only if defendant was claiming that Bumps at the time he dealt with him was an ostensible agent (section 1239, R. C. 1919) of appellant as distinguished from an actual agent (section 1238, R. C. 1919). Under the instructions of the court, no exception to which has been preserved, ostensible agency is not involved in this case.

██ At the close of all the testimony, appellant moved for directed verdict upon all the issues, which motion was denied. The only error assigned by appellant whereby it seeks to review the sufficiency of the evidence to support the verdict upon the question of whether or not agency existed is that the court erred in denying this motion for directed verdict. At the time this motion was made there was considerable conflict in the evidence as to the value of the automobile in question which appellant sought to recover and which respondent, having rebonded, had retained in his possession. By the provisions of section 2522, Rev. Code 1919, it is the duty of the jury in an action in claim and delivery, if they find for the plaintiff, to find the value of the property. The ruling of the trial court in refusing to direct the verdict was not only amply justified, but absolutely required by reason of the conflicting testimony as to the value of the property regardless of any other matters. That ruling must therefore be sustained, and, under such circumstances, appellant cannot, by predicating error thereon, make use of it to review the sufficiency of the evidence on the question of agency.

The only substantial question presented by this appeal is as to the admissibility of the testimony of two telephone operators at Flandreau. The man Bumps was in Flandreau with the car in question and endeavoring to sell it most, if not all, of the time from Tuesday, April 14, 1925, to Saturday, April 18, 1925, both days inclusive. There is no claim that he was ever in Flandreau at any other time. One of the telephone operators testified that she

remembered meeting Bumps in Flandreau in April when he came to the telephone station to put in calls for Sioux Falls; that she was acting as long distance operator "two or three times when he came in but not always." Another operator testified that she remembered Bumps coming to the station in April and putting in calls for Sioux Falls while she was acting as long distance operator.

As to the detail of these calls, the testimony of the Flandreau operator was that Bumps upon these various occasions asked to talk to the McKean Auto Company at Sioux Falls, and that she "got them on the line." The operator further stated that she did not know of her own personal knowledge that the connection was made with the McKean Auto Company as requested by Bumps, but that she called the Sioux Falls operator and asked for such connection and some connection was in fact made with a telephone in Sioux Falls.

The telephone has been in common use for more than 40 years, and for many years its use has been probably more nearly universal than the telegraph and almost as much so as the mails as a method of communication. Telephone companies are common carriers of messages just as much as are telegraph companies. The regularity and certainty with which telephone connections are made by operators upon request is just as much a matter of common knowledge and experience as is the regularity and certainty of the transmission and delivery of mail and telegrams. If A enters the long-distance telephone office in the town of X and informs the long-distance operator that he desires to talk to the business office of B, a telephone subscriber in the town of Y, whereupon such long-distance operator communicates with the operator in the town of Y and advises such Y operator that she desires to be connected with the business office of B in said town of Y, and is thereupon, by the Y operator, in response to such request, connected with some subscriber in the town of Y with whom A talks, without objection, we are of the opinion that there arises from such facts, by virtue of the common experience of the regularity and certainty of telephonic connections under such circumstances, a presumption of fact (disputable of course, but prima facie good until disputed) that A has been in telephonic communication with B's office.

"The telephone companies keep a large force of operators in their central stations constantly engaged in connecting the wires of

the different subscribers who wish to speak to each other. The process of making these connections is so rapid and frequent that it becomes almost mechanical. The telephone companies are engaged in public service of the same character as that of a telegraph company or a common carrier, and they are in like manner subject to regulation by law, as quasi public servants. The contrivance has been found so satisfactory in actual use that a large volume of the important business of the country is now transacted by means of it. It may, therefore, be assumed that, as compared with the whole number, the number of mistakes in connections that are not immediately discovered by both parties is very small. These considerations are matters of common knowledge, and they enter into the question of the identification of the defendant's agent.

"They show that the telephone and its use have become so much a part of daily life and experience that business carried on over it must be deemed to be subject to the operation of the disputable presumptions or inferences applicable to like affairs, as declared in section 1963 of the Code of Civil Procedure. We refer to the following subdivisions of that section: 'That private transactions have been fair and regular.' Subd. 19. 'That the ordinary course of business has been followed.' Subd. 20. 'That things have happened according to the ordinary course of nature and the ordinary habits of life.' Subd. 28. These presumptions have been recognized by the courts and applied to the cognate operations of the telegraph and the post office. If a letter or telegram is duly addressed, prepaid, and delivered in the post office receptacle, or to the telegraph company, there is a disputable presumption of fact, arising from the almost invariable result, that it has been transmitted and delivered in regular course to the person addressed. Eppinger v. Scott, 112 Cal. 371, 42 P. 301, 44 P. 723, 53 Am. St. Rep. 220; Code Civ. Proc. § 1963, subd. 24; 1 Greenl. on Ev. § 40; 1 Elliott on Ev. § 107; 1 Wigmore on Ev. § 95. For like reasons, if nothing unusual occurs in the process, there would be a disputable presumption that a request to the central telephone operator to connect the caller with a named number in the directory, and to call such subscriber by means of a bell or other signal, has been complied with by making the proper connection with the number and giving the necessary signal at the other end of the line." Union Construction Co. v. Western Union Telegraph Co.,

163 Cal. 298, 125 P. 242. See, also, Wolfe v. Missouri Pacific Ry. Co., 97 Mo. 473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. Rep. 331; 22 C. J. pp. 193, 194; Jones on Evidence (2d Ed. Bancroft-Whitney, 1926) pp. 349, 350; Wigmore on Evidence (2d Ed.) § 2155.

■ We are therefore of the opinion that this testimony tended to show that Bumps, during the period from Tuesday to Saturday of the week in question, and while he was at Flandreau, was on more than two or three occasions in telephonic communication with the business office of appellant, and the question is whether or not such testimony was properly admitted. We think it was. Of course, it does not establish agency and it is doubtless true that the mere fact that Bumps telephoned to the office of appellant does not even justify an inference that he was the agent of appellant. But, at the time this testimony was offered, Mr. L. A. McKean, the active managing officer of appellant company, had already testified. He had not only denied that Bumps was an agent of appellant, but had denied any knowledge on the part of appellant company that Bumps was in Flandreau. He had testified, in substance, that appellant company was in the automobile business and handled Flint automobiles; that on Monday Bumps called at the office of appellant in Sioux Falls, purporting to be a representative of the Flint automobile factory; that it was the custom of appellant to let factory representatives have a car every time they came in if they asked for it; that Bumps came in again the next day (Tuesday) and made a remark "about going to Canton to see some of his wife's folks," saying he would be gone for a couple of days and would be back; that witness let him have the car here involved for that purpose; that a couple of days went by and Bumps did not return, and "we were a little worried and wondered where he was"; and that appellant company knew nothing about the actual situation and nothing about the whereabouts of Bumps until Saturday night, when they were informed that he had been in Flandreau and had sold the car.

It will thus be seen that, when the testimony of the telephone operators was offered, there was a square issue between the parties as to the status of Bumps' presence in Flandreau. According to the contention of respondent, Bumps was in Flandreau with the knowledge and consent of appellant and by its direction, while ac-

cording to the contention of appellant, Bumps must have been in Flandreau with this car, knowing that he had no business to be there with it, knowing that it had been loaned to him for the sole purpose of going in a different direction. to visit relatives at Canton, knowing that appellant supposed him to be at Canton, but having come secretly and surreptitiously to Flandreau, with the intention of unlawfully disposing of appellant's automobile in Flandreau without appellant's knowledge of his presence there and making away with the proceeds. Upon this issue we think any conduct of the man Bumps was admissible which would tend to throw any light upon the question of the nature of his presence in Flandreau and whether or not appellant had knowledge of his presence there.

■■ It is a matter of common knowledge that a telephone subscriber, receiving a long-distance call, is either informed by the operator of the point of origin of the call when he is called to his telephone to respond, or can very readily and very easily ascertain such point of origin by inquiry. If appellant's contention as to the facts was correct, it seems scarcely likely, according to general human experience, that Bumps, endeavoring wrongfully to dispose of the car in Flandreau, knowing that he had borrowed it for a couple of days only, knowing that appellant supposed him to be visiting relatives in Canton, would have been telephoning appellant's business office from the town of Flandreau on occasions so numerous as to be more than two or three during the period from Tuesday to Saturday. We think, under the particular circumstances of this case, such conduct on the part of Bumps was admissible, and it was for the jury to say whether such conduct most accorded with the theory of the appellant or the theory of the respondent as to the nature of Bumps' presence in Flandreau and as to appellant's knowledge thereof. If appellant thought that the jury might make improper use of such testimony or might consider it in connection with fact questions regarding which it was not probative, appellant should have requested a proper cautionary instruction from the court.

We believe no prejudicial error appears in the record, and think the judgment and order appealed from should be affirmed.

As we have previously. stated, and as was held in the former opinion, the question of the sufficiency of the evidence is not pre-

sented by this appeal. Inasmuch, however, as we are now affirming the judgment appealed from, and inasmuch as the writer of the former opinion (53 S. D. 55, 220 N. W. 144) in the last paragraph thereof said as follows: "The record in this case does not purport to contain all the material evidence in the case, but, so far as appears from this record, there was no competent evidence outside of the mere possession of the car by Bumps, that he had authority to sell it or was the agent for plaintiff in any sense whatever"—we think we should now state that the record so far as it is presented here does show at least the following evidence competent for the consideration of the jury upon the question of whether or not Bumps was in fact an actual agent of plaintiff to sell the car in question.

■ On Monday or Tuesday after the sale in question, McKean, the managing officer of appellant, subscribed and swore to a criminal complaint before the state's attorney of Minnehaha county, charging said Bumps with having committed the crime of embezzlement, which complaint in three or four different places affirmatively alleges that Bumps on the day of the sale in question was "then and there a servant, agent and employee of the L. A. McKean Auto Company, a corporation." It is true that McKean endeavored to explain that he did not know what was in this instrument when he signed and swore to it, but that was a question for the jury.

■ One Tilman Gulbranson testified that he was in the grocery business in Flandreau and had been in appellant's place of business in Sioux Falls a number of times, and had himself purchased a Flint car from appellant a few months previously; that on Monday, the day before Bumps came to Flandreau, he (Gulbranson) was in appellant's place of business in Sioux Falls and had a talk with L. A. McKean, the managing officer of appellant, concerning which the witness says: "McKean told me he was sending a man up to sell some cars and if I had any prospects to introduce this man to them and that he would make it right with me. He wanted me to help him make some sales." The next day, Tuesday, Bumps came to Flandreau with the Flint demonstrator of appellant, bearing appellant's dealer's number, with sales literature therein, and came to Gulbranson, and during the week from Tuesday to Saturday was introduced by Gulbranson to at least

three prospective purchasers, including the defendant. The witness McKean did not deny such a conversation with Gulbranson, but said it was at an earlier date, "perhaps two or three weeks earlier." This also was a question for the jury. Gulbranson had never seen nor met Bumps previously to his coming to Flandreau, and no reason is shown by the evidence why Bumps should come there and seek out Gulbranson unless it was at the direction of appellant.

Mrs. Harvey Price testified that she lived on a farm about two miles west of Flandreau, and that Gulbranson brought Bumps to her home and he endeavored to sell her this automobile; that on Friday of the week in question she rode from her home to Sioux Falls with Bumps in the car in question, and was taken by him to appellant's garage, where she saw Mr. L. A. McKean and was introduced to him by Bumps; that Bumps said, in the presence of McKean, that he was trying to sell a car to Mrs. Price; and that Mr. McKean thereupon told her the good qualities of the cars in question, and Bumps, in the presence of McKean, showed her different cars which were there; and that, while she was there looking at the cars, Bumps and Mr. McKean held a conversation together for about five minutes a little way off from her immediate presence, but within her vision. Mr. McKean denied ever having seen Mrs. Price previously to the trial, but this also was a question for the jury.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and BURCH, J., concur.

POLLEY, J. (dissenting). My views of this case are the same now as they were when the case was here before and as expressed in the opinion reported in 53 S. D. 55, 220 N. W. 144.

BROWN, J., absent and not participating.