WESTRE, Respondent

v.

DE BUHR and Sinclair Refining Company, Appellant

(144 N.W.2d 734)

(File No. 10270. Opinion filed August 18, 1966)

**Christensen & Christensen,** Elk Point, for appellant.

**Bogue & Weeks,** Vermillion, for respondent.

COOPER, Circuit Judge.

This is an action to recover damages for personal injuries sustained by the respondent at Jack's Sinclair Service, Vermillion, South Dakota, while respondent's tire was being mounted on a rim by John DeBuhr, operating the service station under lease from appellant Sinclair Refining Company. Judgment was

entered against both John DeBuhr and Sinclair Refining Company in the amount of $8,000.00. John DeBuhr did not defend the action, nor has he appealed from the judgment.

The principal question on this appeal is whether the evidence, construed in the light most favorable to respondent, is sufficient to establish that John DeBuhr was an employee of Sinclair Refining Company so that the latter is liable under the doctrine of respondeat superior.

The definition of a servant is set out at length in Restatement of the Law, Agency, 2d, Vol. 1, § 220, and cases citing such definition are found in Vol. 3, Pages 302-325. As applicable to retail gasoline stations, this question is annotated at length in 116 A.L.R. 470-473 and 83 A.L.R.2d 1292-1303. To attempt to cover and differentiate the numerous cases cited would unduly lengthen this opinion.

Suffice it to say that the deciding factor appears to be the extent of the control exercised by the oil company, and that the decided weight of opinion in the cases with leases and sales agreements similar to the ones presented here, holds that the service station operator occupies the position of an independent businessman rather than an employee.

The lease in question here is a form printed by Sinclair Refining Company providing for a rental computed at 1.5 cents per gallon of gasoline delivered to said station for sale therefrom, with a minimum of $150 except for August through November, when the minimum is $125. It was further provided that if the amount of rental is computed on the volume of business, that lessee agrees to promote diligently the sale of gasoline and other products, and keep the station open for the same time as competing service stations were open. The lease also contained a provision that the rest rooms and toilet shall be kept clean and hygienic so as to comply with standards set by any laws or ordinances, and a further provision that, without lessor's prior written consent, no part of the station could be used for motor overhauling, body and fender repairing or refinishing, tire recapping, welding or for any activity which cannot be conducted

safely in the presence of volatile petroleum products. There is also a clause wherein lessee agrees to indemnify lessor for any liability for damages arising out of the operation of the station.

■ ■ Similar types of clauses are found in many leases. None of these indicate the type of control sufficient to establish anything but a landlord-tenant relationship. Nor does the fact that the rental was lowered at one time indicate anything but a desire to retain a tenant. The sales agreement established nothing more than a seller-purchaser arrangement. No social security or taxes were withheld by Sinclair, nor unemployment taxes paid by Sinclair. In most of the cases where the courts have held the station operator to be an employee, these taxes and withholdings have been paid by the oil company. Other indications of the independent nature of DeBuhr's business included: payment of all expenses, and receipt of all income without any accounting to Sinclair; freedom of operation of the business, and employment of help; retail sales license in De-Buhr's name; DeBuhr's ownership of the hand tools and much of the equipment.

The oil company did furnish some assistance to DeBuhr. One of these was that it agreed to accept at face value all purchases made on credit cards, provided that the products or services were authorized. Honoring credit cards was entirely the option of DeBuhr. Sinclair also made available service manuals, use of which was optional, and conducted service schools, attendance at which was optional. This is nothing more than most manufacturers furnish to their independent dealers. Nor was any authority or control shown to have been exercised by Sinclair's representative, T. E. Boch. He may have sent in a few customers, but it is not unusual for wholesalers and distributors to aid their independent dealers in promoting sales.

■ Respondent contends that by signs and advertising the Sinclair Refining Company held itself out as the operator of the station, and were thus estopped from denying an employer-employee relationship. This identical position was taken in Reynolds v. Skelly Oil Company, 227 Iowa 163, 287 N.W. 823, wherein the court said at p. 827:

"The argument of appellee that the Skelly Oil Company was estopped because of the signs displayed and that, because of such signs, there was a presumption that the station was owned by the Skelly Oil Company has no support in reason or authority. As well argue that, because the word 'Chevrolet' or 'Buick' is displayed in front of a place of business, General Motors would be estopped to claim that it was not the owner of the business. It is a matter of common knowledge that these trademark signs are displayed throughout the country by independent dealers".

This appears to the court to be even more a matter of common knowledge at the present time.

It is, therefore, the opinion of the court that the respondent failed to prove as a matter of law that DeBuhr was an actual or apparent employee of appellant Sinclair Oil Company. The motion for a directed verdict should have been granted. It is, therefore, unnecessary to consider appellant's other assignments of error.

Judgment reversed as to appellant Sinclair Refining Company.

RENTTO, P. J., and HANSON, BIEGELMEIER and HOMEYER, JJ., concur.

COOPER, Circuit Judge, sitting for ROBERTS, J., disqualified.