Lloyd FOX and Howard Jensen, Plaintiffs and Respondents,

v.

Richard F. KNEIP, George Kane, and Alice Kundert, as members of the Board of School and Public Lands, and George Kane, as Commissioner of School and Public Lands, Defendants and Appellants.

No. 12084.

Supreme Court of South Dakota.

Argued March 18, 1977.

Decided Dec. 7, 1977.

Rehearing Denied Jan. 18, 1978.

Donn Bennett, of Mueller & Bennett, Belle Fourche, for plaintiffs and respondents.

Doyle E. Estes, Asst. Atty. Gen., Pierre, for defendants and appellants; William J. Janklow, Atty. Gen., Pierre, on the brief.

MORGAN, Justice.

In 1972 the Commissioner of School and Public Lands having noted that by applica-tion of the legislative mandated minimum bid formula (SDCL 5-5-10.1 to 10.4) the school and public lands across the state were being leased for about the same amount per acre as the counties were ask-ing the state to pay in lieu of taxes, and having determined that the formula result did not approximate the fair market value of the leases, unilaterally applied a 50% increase factor to the formula result for lands advertised for lease bids that year. In 1973 the Commissioner, still dissatisfied with the discrepancy between the adjusted figure and what he determined to be the fair market value, applied a 75% increase factor to the formula for lease bids that would realize an additional $116,500 for lease lands for that year. The plaintiffs, respondents herein, filed an action for de-claratory judgment that the Commissioner was required by law to use the statutory formula for the minimum bid figure and sought an injunction requiring him to do so. Cross-motions for summary judgment re-sulted in a judgment for the respondents which, in essence, determined that: (1) the Commissioner and the Board of School and Public Lands (Board) are "agencies" under the APA (SDCL 1-26); (2) that the estab-lishment of the minimum lease rate was a "rule" under the APA; (3) that the authori-ty to establish such rate was in the Board but the Commissioner had usurped the right and duty of the Board; and (4) that the so-called rule was invalid. The trial court further granted an injunction against the Board and the Commissioner from estab-lishing any rule setting forth a minimum lease rate other than that provided by for-mula. We reverse.

Two questions are raised by this appeal. The first, is there a right or duty on the part of the Commissioner to tamper with the results of the legislature's formula for minimum bid price and the second, assum-ing that the answer to the first is in the affirmative, is the Commissioner in so doing engaged in the process of rule making ame-nable to the requirements of the APA.[1]

1. Because the Board did not attempt to set the new minimum lease rate, because a 1976 amendment to SDCL Chapter 5-5 abolished the Board as previously constituted and the 1977

A determination of the questions presented requires a review, to some extent, of the history of our state lands and the laws enacted with respect thereto going back to the Enabling Act of February 22, 1889, Chapter 180, 25 Statutes at Large 676.

Under § 10 of the Enabling Act the State of South Dakota received from the United States Government sections sixteen and thirty-six of each township, or lands equivalent to those sections. Certain restrictions were placed on the disposal of these lands as stated in § 11 of the Enabling Act. The provisions pertinent to the leasing of school lands are:

. . . Except as otherwise provided herein, the said lands may be leased under such regulations as the Legislature may prescribe.

. . . The state may also, upon such terms as it may prescribe, grant such easements or rights in any of the lands granted by this Act, as may be acquired in privately owned lands through proceedings in eminent domain: provided, however, that none of such lands, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition, *nor unless full market value of the estate, or interest disposed of,[2] to be ascertained in such manner as may be provided by law, has been paid or safely secured to the state.* (emphasis added).

Article VIII of the South Dakota Constitution deals with school lands. Section 2 thereof provides that all property acquired for public schools shall be and remain in a perpetual fund for the maintenance of public schools in the state, and denominates the fund as a trust fund held by the state.

The Enabling Act granted the land to the "state" and authorized the leasing thereof under legislative regulations. The Act further admonished the state that no estate or interest should be disposed of *unless the full market value ascertained as by law* is paid.

The Constitution (Art. VIII) in effect accepted the land on behalf of the state, implemented the conditions for sales and leasing as required by the Enabling Act, declared the property and the proceeds from the sale thereof as a perpetual fund, and impressed it as a "trust fund."

At the same time, in adopting Article IV, the position of the Commissioner of School and Public Lands was created by § 12 and he was given the powers and duties as prescribed by law in § 13.[3]

The legislation implementing the Enabling Act and the South Dakota Constitution is now codified under SDCL Chapter 5–5. The statutes provide that the Commissioner shall have the direction, management and control of the lands (5–1–7) and have set forth the various leasing procedures that must be followed, including the minimum rental rate prescribed under SDCL 5–5–10.-4.

The respondents in their suit contended, and the trial judge agreed, that the Enabling Act grants the land to the state to be leased under regulations prescribed by the legislature; that the legislature adopted SDCL 5–5–10.1 to SDCL 5–5–10.4 as a formula for arriving at a minimum at which bidding on leases shall commence; that the Commissioner has no authority to deviate from the legislative mandate to commence bidding at that figure, and therefore his instructions to the county auditors were invalid, or in the alternative that if he did

---

Legislature established a new Board which by statute is merely an advisory board, we confine this discussion to the relationship between the Commissioner and the legislature apropos the management of the school and public lands. It should further be noted that in discussing the facts of this particular case we are talking about, unless otherwise specifically noted, the leasing of grazing land as opposed to tillable land referred to in the statutes as agricultural land.

**2.** "Disposed of" has been defined as to include the leasing of lands on a rental basis. *Rider v. Cooney*, 94 Mont. 295, 23 P.2d 261 (1933).

**3.** The 1972 Constitutional Amendment retained the Office of Commissioner but deleted the provisions with reference to powers and duties.

have authority he had to act in conformity with the APA.

The thrust of the Commissioner's argument is that the Enabling Act mandates that the land be leased for its fair market value and that the minimum annual rental rate formula does not return fair market value to the state; and that as the constitutionally designated Commissioner of School and Public Lands, he is designated as trustee, and as trustee he has inherent authority to disregard the legislature to the end of obtaining fair market value.

It is obvious in discussing "fair market value" and "minimum annual rental rate" we are not using the terms synonymously. However, although the record does not affirmatively set forth that, in most cases the figures set as minimum were the successful bid prices for lack of competition at the "auction sale," such is implicit throughout; for if there were competition for the leases the minimum formula figure would be of little importance, inasmuch as the competitive bidding would ascertain what the full market value is. Lacking the competitive sale we must look further to the roots of the authority of the respective governmental entities, for nowhere in the Enabling Act is the Commissioner or Board of School and Public Lands mentioned, nor does the constitution grant the Commissioner any special powers or duties or designate him to be sole trustee of the school lands and funds.

■ We agree with the respondent that the legislature, under its authority to create leasing regulations, has authority to set a formula for a minimum annual rental rate on leases. However, we so hold that the formula does not purport to set the fair market value but is merely a minimum point from which to commence bidding. Were it otherwise we would have to seriously consider the constitutionality of the statutory formula, for it incorporates at least one ingredient that has no direct bearing on the value of land but rather appears to be a measure of the state of the beef cattle industry.[4]

■ We hold, however, that the Commissioner has authority to ascertain the fair market value of the leasehold interests and to require that such value be obtained. In arriving at this decision we do not have to determine whether or not this authority is inherent in the Commissioner by reason of his constitutionally designated position, for indeed the legislature in its wisdom, for years, has given the Commissioner (and the governor) the authority to reject leases.[5] While we find that the Commissioner did not go through the procedural steps of rejecting the leases, he did, in effect, advise the county auditors of the minimum price per acre that he considered to be fair market value and which value must be obtained before he, in the exercise of his statutory authority, would approve the leases. We therefore hold that while the Commissioner does not have authority to disregard the minimum annual rental rate determined by statutory formula, he is not bound to accept it as a maximum or as a fair market value; and therefore his actions in the instant case were not prejudicial to the respondents but rather worked to the advantage of both the respondents and the state, inasmuch as at the time of bidding, respective lessees were advised as to the figure that he considered the fair market value which must be obtained before he could or would approve the various leases.

■ We further hold that the Commissioner, in exercising his authority as granted by the legislature, is not controlled by the APA. As this Court said in the case of *State ex rel. Green v. Knight, Commissioner of School and Public Lands,* 47 S.D. 224, 197 N.W. 159 (1924):

4. While we agree that such ingredient might be one of many factors that a prospective lessee might consider in determining whether to bid or not, and if so how high to bid, it is certainly not the sole criterion. The 1977 Legislature changed the criteria from average price per

pound of all beef cattle to the average price of a 425 pound calf.

5. SDCL 5–5–15: "If the commissioner approves such lease, he shall submit the same to the Governor for his approval. * * *"

. . . [I]t is clear that the approval of a lease of state land by the commissioner of school and public lands is a matter that involves official discretion on his part, over which this court has no right of control. . . . whether he should approve or disapprove is a matter depending entirely upon his own judgment, and when this judgment has been exercised it is final, assuming, of course, that there has been no fraud or other misconduct committed by the commissioner.

Such exercise of discretion is clearly not rule making as defined in SDCL Chapter 1–26.[6]

■ A rule (or a "regulation"—a term used interchangeably with rule) is the product of rule making and rule making is the part of the administrative process that resembles the legislature's enactment of a statute.[7] Rule making is the issuance of regulations or the making of determinations which are addressed to indicated but unnamed and unspecified persons or situations.[8] The discretionary authority given to the Commissioner by the legislature clearly does not fall within these definitions.

Our earlier action on the state's motion to vacate the injunction in response to which we ordered the area of the injunction to be diminished from all school lease lands to the lands previously held by respondents effectively disposed of that issue on appeal.

We therefore reverse the decision of the trial court and remand the same with instructions to enter judgment in favor of the appellants and against the respondents and to determine what damage, if any, was suffered by the state and give judgment against the respondents in such amount.

All the Justices concur.

**6.** SDCL 1–26–1.7 states:

   (7) "Rule" means each agency statement of general applicability that implements, interprets, or prescribes law, policy, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include:

    (a) statements concerning only the internal management of an agency and not affecting private rights or procedure available to the public, or

    (b) declaratory rules issued pursuant to § 1–26–15;

**7.** Davis, Administrative Law Treatise, § 5.01 at p. 285.

**8.** Fuchs, Procedure in Administrative Rule-Making, 52 Harv.L.Rev. 259, 265 (1938).