**Lloyd FOX and Howard Jensen, Plaintiffs and Respondents,**

v.

**Richard F. KNEIP, George Kane, and Alice Kundert, as members of the Board of School and Public Lands, and George Kane, as Commissioner of School and Public Lands, Defendants and Appellants.**

**No. 12980.**

Supreme Court of South Dakota.

Argued May 22, 1980.

Decided July 16, 1980.

Rehearing Denied Aug. 22, 1980.

Donn Bennett, Belle Fourche, for plaintiffs and respondents.

Judith A. Atkinson, Asst. Atty. Gen., Pierre, for defendants and appellants; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

DUNN, Justice.

This appeal is taken from an order of the circuit court denying damages to the State. We reverse.

The facts of this case are fully set forth in *Fox v. Kneip*, 260 N.W.2d 371 (S.D. 1977), which we will summarize briefly. In the spring of 1976 the Commissioner of School and Public Lands (Commissioner) set the minimum annual rental rate per acre of the school and public land in South Dakota at $4.50 AUM (animal unit per month) for 1976 pursuant to SDCL 5–5–10.4. Plaintiffs Fox and Jensen obtained an interlocutory injunction to prevent the increase from $1.58 AUM (the previous year's price) to $4.50 AUM. These plaintiffs filed an injunction bond in the amount of $116,503.04 for such damages that the State might sustain. All school and public lands leased in March 1976 were leased at the starting bid of $1.58 AUM.

In *Fox*, supra, we reversed the circuit court and held that the Commissioner has the authority to set the minimum acceptable bid for school and public lands. We remanded to the circuit court to determine what damage, if any, the State had suffered.

At the damages hearing, Mr. Kane, Commissioner in 1976, testified that in the past, year in and year out, 98% of the unimproved school lands offered for lease were leased at the first offering. In 1977, when lessees paid a total of $4.50 AUM, 98% of school lands were leased at the first offering. The cost of management was the same in 1976 as in 1977. Mr. Kane further testified that he compared the leasing of unimproved school lands to grazing leases in arriving at the fair market value. Plaintiffs' expert witness testified that he also compared the rental rates of various types of property to determine fair market value.

■ We agree that comparison between the leasing of school land and private grazing leases is the proper way to determine the fair market value. Mr. Kane testified that he gathered information from ranchers throughout the state concerning the proper rental rate. Mr. Kane also testified that he took into account the fact that private leases usually involve improvements and upkeep on these improvements, and he made adjustments accordingly in order to justify the comparison between a private lease and a lease of unimproved school land.

It is important to note, as we set out in *Fox*, supra, that the reason fair market value is not reached through the bidding process is due to the presence of grazing associations. These associations consist of ranchers who agree not to bid against one

another. Rather, they designate one rancher to bid the minimum and then parcel the land among themselves.

■ We find that the circuit court erred in refusing to be bound by the fair market value set by the Commissioner. We clearly stated in *Fox,* supra, that the authority to set such value belongs solely to the Commissioner, absent any showing of fraud or misconduct. There is no claim by plaintiffs that the Commissioner was guilty of fraud or misconduct in reaching the value of $4.50 AUM, and thus we must accept this figure.

■ The only remaining question on the issue of damages is whether the State proved that the lands could have been leased at $4.50 AUM had the injunction not been issued. We find that the State proved its damages by establishing that 98% of school lands were leased at the first offering prior to 1976, and that 98% were leased at the first offering in 1977 when the price was $4.50 AUM. The ranchers themselves testified that they would have paid $4.50 AUM in 1976 had that been the established price. The ranchers argue, however, that they would have paid the rental because the school lands are often located at a point where possession thereof is crucial to keeping the ranch unit together and relieves the rancher from having to fence the school lands.

However, it is also clear from the evidence that the $4.50 AUM was set after an extensive survey of the rentals for similar land, and that the ranchers could not hope to obtain like grazing at a lesser price. Further, the fact that portions of this land were in a strategic position for keeping ranch units together did not occur by chance. Some of the ranchers had built their ranch units around this public land over a period of years in which they enjoyed a monopoly of their particular parcels through the use of grazing association practices which eliminated competitive bidding. In fact, this surrounding of the public land by deeded land would chill any enthusiasm for bidding by anyone outside the grazing association, as he would find himself "landlocked" in hostile territory without a fence to protect him. Thus the ranchers are in no position to complain now about having to pay the fair rental for public land they deem essential to their ranching units.

The simple fact is that the school lands were not set aside for the benefit of the ranching community; rather they were set aside for the benefit of the school children of South Dakota. Article VIII, § 3 of our state constitution provides that the income from this school fund "shall be faithfully used and applied each year for the benefit of the public schools of the state" and SDCL 5–5–3 provides for regulation necessary to provide "that such lands may be leased most profitably for the state." These are solemn obligations on behalf of the school children of South Dakota. The Commissioner, in setting this fair minimum rental, was simply carrying out his clear statutory and constitutional duty.

■ Damages need not be proved with mathematical precision. *Karlen v. Butler Mfg. Co.,* 526 F.2d 1373 (8th Cir. 1975). We hold that the circuit court erred in finding that the damages suffered by the State were speculative and conjectural. Plaintiffs are liable for all the natural, direct, and proximate consequences of the interlocutory injunction. *Orr v. Kneip,* 287 N.W.2d 480 (S.D. 1979). The evidence shows that had the injunction not been issued, the lands in question would have leased for $4.50 AUM rather than $1.58 AUM. We are convinced that all the lands offered at $4.50 AUM would have been leased. We are also convinced from all of the evidence that the Commissioner in setting the minimum rental at $4.50 AUM found the fair market value for the purpose of establishing damages in this lawsuit.

We reverse and remand with instructions to enter judgment in favor of the State in the amount of $102,342.15, plus pre-judgment interest at the rate of 6% per annum from the date of the injunction in 1976.

All the Justices concur.